UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIC JONES,

        Plaintiff,

vs.                                  Case No.  3:05-cv-1195-J-MCR

JO ANNE B. BARNHART, Commissioner of
Social Security,

        Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") on February 5, 1998, alleging disability as of that same date.  (Tr. 61)  The Social Security Administration ("SSA") denied this application on March 27, 1998. (Tr. 42).  Plaintiff protectively filed a second application for SSI on August 19, 1998, alleging disability beginning on October 1, 1994.  (Tr. 65)  This application was denied initially and upon reconsideration.  (Tr. 44,49).  Plaintiff then requested and received hearings

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 10 and 11).

—

before an Administrative Law Judge on May 21, 1999 and March 1, 2000.  (Tr. 220-39,

240-60).  On June 23, 2003, the Administrative Law Judge ("the initial ALJ") issued a

decision finding Plaintiff was not disabled.  (Tr. 12-31).  Plaintiff filed a Request for

Review by the Appeals Council, which was denied on March 4, 2004.  (Tr.  4-6)  Plaintiff

then filed a complaint in the United States District Court.  See Jones v. Commissioner of

Social Security No. 3:04-CV-00215 HTS.  The U.S. District Court issued an opinion and

order on March 24, 2005, remanding the case.  (Tr. 275-88).  On July 26, 2005, a

hearing was held before a second Administrative Law Judge ("the ALJ").  (Tr. 323-42).

The ALJ denied Plaintiff's application for benefits in a decision issued on September 22,

2005.  (Tr. 264-73).  Plaintiff then timely filed a Complaint in the U.S. District Court on

November 21, 2005.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since October 1, 1994 due to back pain and mental

impairment. (Tr. 65, 227-44).

### B.    Summary of Evidence Before the ALJ

Plaintiff was born on August 16, 1951 and was 54 years of age at the time the

ALJ's decision was issued on September 22, 2005.  (Tr. 65).   He has a sixth grade

education and has performed past work as a construction laborer, a trash collector, and

a landscape specialist.  (Tr. 322, 326-31).

The record reveals the following information relevant to Plaintiff's claim of mental

impairment.  Plaintiff testified that he stopped going to school during six or seventh

grade and that he was unable to read at that time.  (Tr. 327).  Plaintiff's school records confirm that he had low grades and difficulty in understanding and performing the required schoolwork.  (Tr. 212-18).  The records also indicate, however, that he was a "c[h]ronic class cutter."  Id.

Dr.  Lauren Lucas, Ph.D performed a psychological consultative examination on Plaintiff and she diagnosed Plaintiff with a "learning disorder" and "borderline intellect." (Tr. 188-94).  Dr.  Lucas administered an Intelligence Quotient ("IQ") test and Plaintiff demonstrated a full-scale IQ test score of 70.  (Tr. 194).

Regarding Plaintiff's functional abilities, Plaintiff testified that his reading ability is limited to reading small words only and recognizing family names.  (Tr. 327).  Plaintiff further testified that he previously had a driver's license, which he obtained by taking an oral rather than a written test, but that he let it expire because he doesn't own a vehicle. (Tr. 328).  Plaintiff is able to perform simple mathematics, such as addition, division, and multiplication, and he is also able to "make change" and ensure that he is "getting the correct change back."  (Tr. 329).  Plaintiff testified that he does not have a checking account and would not be able to maintain one and that his brothers who live in his mother's house with him pay the bills.  (Tr. 337-38).  Plaintiff is able to navigate the public transportation system by riding the bus and he is also able to shop for groceries. (Tr. 334-35, 338).

Plaintiff also testified that he cared for his sick mother for six years until her death several months before the hearing in front of the second ALJ.  (Tr. 332).  Caring for his mother included dealing with her "trachea, helping her with her bath, and helping her

with mostly everything." Id.  Plaintiff gave his mother her medication throughout the day, but he required the help of his sister to read the labels on the prescription bottles and put the pills into containers to be dispensed daily.  Id.  The impartial vocational expert testified that the duties Plaintiff performed in caring for his mother were consistent with the job of a "home attendant," which is considered semi-skilled in nature. (Tr. 341).

> C.    **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(l), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy,

then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (Tr. 266).  At step two, the ALJ determined Plaintiff had "cervical spondylosis status post cervical surgery and borderline intellectual functioning" and that these impairments were "'severe' within the meaning of the Social Security Regulations."  Id.  At step three, however, the ALJ determined Plaintiff's impairments were "not 'severe' enough to meet or medically equal, either singly, or in combination" any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  Id.  Specifically, the ALJ considered whether Plaintiff's impairment met Listing 12.05(C) regarding Mental Retardation and determined Plaintiff's borderline intellectual functioning did "not meet or medically equal" that Listing.  (Tr. 268).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work because his past relevant work was performed at medium to heavy exertional levels, while Plaintiff was limited to light exertional  work.  (Tr. 270). Finally, at step five, the ALJ used the Medical-Vocational Guidelines and considered testimony of a vocational expert, as well as Plaintiff's age, education, work experience, and residual functional capacity ("RFC") to determine that Plaintiff was able to perform work which existed in significant numbers in the national economy.  (Tr. 271).  For these reasons, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act.  Id.

III.    **ANALYSIS**

    A.    <u>**The Standard of Review**</u>

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. <u>Foote</u>, 67 F.3d at 1560; <u>accord</u>, <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.      Issue on Appeal**

Plaintiff raises one issue on appeal.  (Doc. 13, p. 1, 14).  Plaintiff argues that the

ALJ erred by failing to properly evaluate whether the Plaintiff's impairment meets Listing

12.05(C) for two reasons.  (Doc. 13, pp. 15-19).  First, Plaintiff contends, citing the

Eleventh Circuit Court of Appeals in <u>Hodges v. Barnhart</u>, 276 F.3d 1265, that Plaintiff's

full-scale IQ test score of 70, which is within the range described in 12.05(C), creates a

presumption that deficits in adaptive functioning manifested before age 22.  (Doc. 13 p.

17).  Since the ALJ found Plaintiff's impairment met the other requirements of Listing

12.05(C), according to Plaintiff, his impairment meets Listing 12.05(C).  (Doc. 13, p. 15).

Second, Plaintiff argues the law of the case doctrine may apply and that, if it does apply,

the ALJ erred in determining that Plaintiff did not meet Listing 12.05(C).  (Doc. 13 p. 18).

The Court will address each of these arguments.

**1.      Presumption of Deficits in Adaptive Functioning Manifesting
        Before Age 22**

Plaintiff argues his impairment meets the requirements of Listing 12.05(C) and

thus he is entitled to a finding of "disabled."  (Doc. 13, p. 14).  Listing 12.05(C) states:

> *Mental Retardation:* Mental Retardation refers to significantly
> subaverage general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental period; i.e., the
> evidence demonstrates or supports onset of the impairment before age
> 22.
>        The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied. . . .
>        C.  A valid verbal, performance, or full scale IQ of 60 through 70
> and a physical or other mental impairment imposing an additional and
> significant work-related limitation of function . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C).  Thus, for an impairment to

meet the requirements of Listing 12.05(C), there must be deficits in adaptive functioning

initially manifested prior to age 22, as well as both an IQ score in the range of 60 to 70

and a physical or other mental impairment.  Id.  In 2001, the Eleventh Circuit held "there

is a presumption that mental retardation is a condition that remains constant throughout

life."  Hodges v. Barnhart, 276 F. 3d 1265, 1266 (11th Cir. 2001).   Because of this

presumption, a plaintiff who demonstrates valid IQ scores after the age of 22 in the

range provided for in Listing 12.05 does not need to show evidence that deficits in

adaptive functioning manifested before age 22.  Id.  Instead, valid low IQ scores after

the age of 22 create a presumption that the plaintiff had deficits in adaptive functioning

manifested prior to age 22, thus satisfying the first requirement of Listing 12.05.  Id. at

1269.  Even if a plaintiff demonstrates low IQ scores, however, the Commissioner may

rebut the presumption of mental impairment before age 22 by presenting evidence of

Plaintiff's daily life.  Id.

        Plaintiff contends his impairment meets all of the requirements of Listing

12.05(C).  (Doc. 13, pp. 14-15).  Plaintiff demonstrated a full-scale IQ test score of 70,

which is within the range described in Listing 12.05(C).  (Doc. 13, p. 15).  Plaintiff

argues that his full-scale IQ test score of 70 creates a presumption of mental retardation

that has existed throughout his life.  (Doc. 13, p. 17).  Therefore, he does not need to

present affirmative evidence of deficits in adaptive functioning, but is presumed to have

satisfied that criterium.  (Doc 13, p.  17).  Finally, Plaintiff argues that his impairment

meets the additional requirement of Listing 12.05, which requires a "physical or other

mental impairment imposing an additional and significant work-related limitation of function."  (Doc. 13, p. 15).  Plaintiff contends that because the ALJ determined Plaintiff's cervical spondylosis was a severe impairment, the impairment meets this final requirement of Listing 12.05(C).  (Doc. 13, p. 15).  For these reasons, Plaintiff argues the ALJ erred in determining that Plaintiff's impairment did not meet Listing 12.05(C). (Doc. 13, pp. 14-18).

The Commissioner, on the other hand, argues the ALJ was correct in determining that Plaintiff's impairment does not meet Listing 12.05(C).  (Doc. 14, p. 5, 11).  The Commissioner concedes Plaintiff's IQ test score of 70 creates a presumption that mental impairment manifested before age 22 (Doc. 14, pp. 6-7).  The Commissioner argues, however, that this presumption was effectively rebutted by the presentation of evidence of Plaintiff's daily life activities.  (Doc. 14, pp. 7-8).

After considering Plaintiff's history and noted functional abilities, the ALJ found Plaintiff "functions higher than would be expected if he were mentally retarded or had an actual IQ of 70 or below." (Tr. 268).  Plaintiff testified he had some learning problems in school and that he quit school after grade six or seven.  (Tr.  326-27).  Plaintiff's school records confirm Plaintiff had academic difficulty, but the records also note Plaintiff was a chronic truant.  (Tr. 212-18).  Plaintiff testified he is able to read and write small words and family names and that he can count, do simple arithmetic, make change, and go grocery shopping.  (Tr. 327, 329, 338).  Further, Plaintiff is able to plot a course on the public bus system and read well enough to know where to get on and off the bus.  (Tr. 334-35).  Plaintiff cared for his sick mother for six years, albeit with his sister's help in

disbursing the mother's medication because he was unable to read the bottles' labels. (Tr. 332). The impartial vocational expert testified Plaintiff essentially performed the job of "home attendant" (even though he wasn't paid for this work) and that this type of work is "semi-skilled" in nature. (Tr. 341). Based on this evidence, the ALJ found that although Plaintiff exhibited "a full-scale IQ of 70, his subsequent vocational history refutes any finding that he had mental retardation or significantly deficient intellectual functioning with deficits in adaptive functioning initially manifested prior to attaining age 22." (Tr. 269).

Based upon the Court's review of the evidence presented, particularly Plaintiff's demonstrated functional abilities and his ability to perform semi-skilled work, the Court concludes substantial evidence supports the ALJ's finding that Plaintiff functions at a higher level than would be expected of someone who is mentally retarded or had an actual IQ test score of 70 or below. Although Plaintiff's IQ test score was 70, creating a presumption of deficits in adaptive functioning manifesting before age 22, the Commissioner rebutted this presumption by showing evidence of Plaintiff's daily life. Since the ALJ found no deficits in adaptive functioning manifested before age 22 and this finding is supported by substantial evidence, Plaintiff's impairment did not meet the first requirement of Listing 12.05(C).

### 2.    Law of the Case Doctrine

Plaintiff argues next that the law of the case doctrine may apply and if it does, the ALJ in the September 22, 2005 decision was bound by the findings of the initial ALJ in the June 23, 2000 decision. (Doc. 13, p. 18). Plaintiff relies on a case from an

Alabama District Court. Id. In that case, the initial ALJ determined the plaintiff met the

criteria for Listing 3.02(A) as of May 8, 1997 and the ALJ awarded both SSI and Social

Security insurance benefits. Berryman v. Massanari 170 F. Supp. 2d 1180, 1184 (N.D.

Ala. 2001). The Appeals Council discovered that plaintiff's insured status expired on

December 31, 1996, so the Appeals Council vacated and remanded the portion of the

decision regarding the insurance benefits only, instructing the subsequent ALJ to

determine whether plaintiff was disabled as of December 31, 1996. Id. On remand, the

second ALJ determined plaintiff was not disabled and that she could perform past

relevant work. Id. On appeal, the district court found that since the Appeals Council did

not vacate the decision awarding SSI benefits, it was "established" that plaintiff met

Listing 3.02(A) as of May 1997. Id. at 1184-85. Since there was no medical evidence

that plaintiff's condition worsened appreciably between December 1996 and May 1997,

the district court held the plaintiff met Listing 3.02(A) as of December 1996 as well. Id.

In the instant case, the initial ALJ found that Plaintiff had a full scale IQ test score

of 70 and that "there is evidence of deficits in adaptive behavior prior to age 22," thus

satisfying the initial requirements of Listing 12.05(C). (Tr. 25). Plaintiff urges this Court

to follow Berryman, and hold that the second ALJ was bound by this finding of the initial

ALJ. (Doc. 13, p. 18). Plaintiff contends that because the initial ALJ determined the

first requirements of Listing 12.05(C) were met and the second ALJ found that Plaintiff's

impairment met the final requirement of Listing 12.05, "a physical or other mental

impairment imposing an additional and significant work-related limitation of function,"

that all of the requirements of Listing 12.05(C) were met and Plaintiff was entitled to a finding of disabled. (Doc. 13, p. 18).

The Commissioner responds that the law of the case doctrine should not apply in the Social Security context and that even if it does apply generally to Social Security cases, it would not apply to the facts in this case. (Doc. 14, p. 15). The Commissioner argues that because this Court remanded the case and instructed the ALJ to "look again at whether the requirements of Listing 12.05(C) are met" and the Appeals Council then vacated the final decision, the ALJ in the September 22, 2005, decision was not bound by the findings of the initial ALJ. (Doc. 14, p. 13). The Commissioner also cites to 20 C.F.R. § 416.1483, which states that when a federal court remands a case to the Commissioner, the Appeals Council may remand the case to an ALJ and on remand, "[a]ny issues relating to [the] claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in [the] case." 20 C.F.R. § 416.1483.

The instant case is distinguishable from Berryman in that the Appeals Council in Berryman vacated and remanded only the Social Security insurance benefits portion of the case but did not vacate the SSI portion. See Berryman, 170 F. Supp. 2d 1180, 1184. The Appeals Council remanded the Social Security insurance benefits portion for the ALJ to decide whether the plaintiff was disabled as of December 31, 1996. Id. On remand, because the SSI portion of the case was not vacated, the second ALJ was bound by the findings regarding the SSI portion. Id. Since the award of SSI benefits was based upon the finding that the plaintiff met Listing 3.02(A) as of May 1997, the

second ALJ was bound by that finding when deciding whether the plaintiff was disabled in December 1996. Id.

In the instant case, however, the district court remanded the final decision and instructed the ALJ to "look again at whether the requirements of Listing 12.05(C) are met." (Tr. 287). The district court specifically ordered the ALJ to "reevaluate" whether Plaintiff's impairment met the requirements of Listing 12.05(C). (Tr. 288). Whereas in Berryman, the second ALJ was bound by the findings of the first ALJ relating to the SSI portion of the case because that portion of the case was not remanded, the second ALJ in the instant case was not bound by the findings of the initial ALJ regarding the requirements of Listing 12.05(C) because the district court specifically instructed the ALJ to "reevaluate" whether Plaintiff's impairment met the requirements. Further, as the Commissioner points out, 20 C.F.R. § 416.1483 states that on remand the ALJ may consider "any issues relating to [the] claim . . . whether or not they were raised in the administrative proceedings leading to the final decision in [the] case." Due to this regulation and the district court's order that the ALJ "reevaluate" whether Plaintiff's impairment meets the requirements of Listing 12.05(C), this Court finds that the second ALJ was not bound by the findings of the initial ALJ regarding Listing 12.05(C), but was free to make his own determination as to whether Plaintiff's impairment met the requirements of that Listing.

## IV.    CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to enter judgment

pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's

decision.   Thereafter, the Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  _28th_  day of November,

2006.


_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

-14-